# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRUCE BRANDEN, JR.** | **CIVIL ACTION** |
| **VERSUS** | **No. 19-2406** |
| **F.H. PASCHEN, S.N. NIELSEN, INC., ET AL.** | **SECTION I** |

## ORDER & REASONS

Before the Court is plaintiff Bruce Branden, Jr.'s ("Branden") motion[1] to remand the above-captioned matter to Louisiana state court. For the following reasons, the motion is granted.

## I.

On February 14, 2019, Branden filed this lawsuit in the Civil District Court for the Parish of Orleans against the following defendants: F.H. Paschen, S.N. Nielsen, Inc. ("F.H. Paschen"); F.H. Paschen's wholly owned subsidiary, FHP Tectonics Corp. ("FHP"); individuals David Flores ("Flores"), Leo Wright ("Wright"), and George Patterson ("Patterson"); and an unnamed insurance company.[2] According to the complaint, Branden was either an F.H. Paschen or an FHP employee.[3] Flores was allegedly his direct supervisor, Wright was allegedly Flores's supervisor, and Patterson was allegedly Director of Property Management for the City of New Orleans.[4] Branden alleges violations of Louisiana's whistleblower statute and F.H.

---

[1] R. Doc. No. 8.
[2] R. Doc. No. 1-2.
[3] *Id.* at 2.
[4] *Id.* at 1.

Paschen internal policies; he also asserts claims for intentional infliction of emotional distress.[5]

On March 15, 2019, F.H. Paschen, FHP, Flores, and Wright (collectively, for the purposes of this motion, the "defendants") timely removed the case to this Court.[6] In their notice of removal, the defendants conceded that Flores and Patterson are Louisiana citizens, thereby destroying diversity of citizenship among the parties.[7] However, they argue that Flores and Patterson were improperly joined and, therefore, should not be considered for purposes of establishing diversity jurisdiction.[8] Branden disputes their contention and has timely moved the Court to remand this matter for lack of subject matter jurisdiction.[9]

## II.

Under 28 U.S.C. § 1441(a), a defendant may remove to federal court any action over which the federal courts have original jurisdiction. Pursuant to § 1332, a district court has original jurisdiction over cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states. "The doctrine of improper joinder rests on these statutory underpinnings, which entitle a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir.

---

[5] R. Doc. No. 8-1, at 1–2; R. Doc. No. 1-2, at 4–7.
[6] R. Doc. No. 1.
[7] *Id.* at 5.
[8] *Id.*; R. Doc. No. 14, at 1.
[9] R. Doc. No. 8-1, at 8–9.

2004) (quoting § 1441(b)). Thus, a lack of complete diversity among the parties will not render a case non-removable if an in-state party has been improperly joined.

The Fifth Circuit recognizes two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* (quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)).[10] To establish improper joinder the second way, "the test . . . is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant." *Id.* The possibility must be reasonable, not merely theoretical. *Travis*, 326 F.3d at 648 (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000)). In other words, the Court must determine whether "there is no reasonable basis for predicting that state law would allow recovery against [the] in-state defendant[s]." *Smallwood*, 385 F.3d at 571.

Typically, if a plaintiff's pleadings would survive a challenge under Rule 12(b)(6) of the Federal Rules of Civil Procedure, there is no improper joinder. *Id.* at 573. If "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder[,] . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* The Fifth Circuit has cautioned, however, that "a summary inquiry is appropriate only to identify the

---

[10] The defendants have not alleged that Branden's state court petition amounts to actual fraud in the pleading of jurisdictional facts.

3

presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573–74.[11]

Jurisdictional facts supporting removal are assessed at the time of removal. *Louisiana v. Am. Nat'l Prop. Cas. Co.*, 746 F.3d 633, 636–37 (5th Cir. 2014). When deciding whether a party was improperly joined, courts must resolve all contested issues and state-law ambiguities in the plaintiff's favor. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005). "The removing party bears the burden of establishing that federal jurisdiction exists," *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995), and this burden is particularly "heavy" when removal is based on a claim for improper joinder. *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 756 (5th Cir. 1996).

---

[11] Branden wrongly asserts that the analysis used to determine whether a plaintiff has stated a claim for relief against a non-diverse defendant is governed by the applicable state-law pleading standard. R. Doc. No. 8-1, at 4. Brendan cites a 2015 opinion from this Court, which relied on a Fifth Circuit opinion issued earlier that year. *Id.* (citing *Masonry Sols. Int'l, Inc. v. DWG & Assocs., Inc.*, No. 15-2450, 2015 WL 6696790, at *3 (E.D. La. Nov. 2, 2015) (Africk, J.) (citing *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 800 F.3d 143, 149 (5th Cir. 2015))). However, the Fifth Circuit opinion on which this Court relied was later withdrawn and superseded by another Fifth Circuit opinion. *See generally Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193 (5th Cir. 2016). In the latter opinion, the Fifth Circuit explained that, when conducting an improper joinder analysis, "[o]ur precedent is clear: A federal court must apply the federal pleading standard." *Id.* at 208. Accordingly, the Court will apply the federal Rule 12(b)(6) analysis.

4

## III.

Branden asserts claims against Patterson and Flores for intentional infliction of emotional distress.[12] To state a claim for relief for intentional infliction of emotional distress, a plaintiff must sufficiently allege: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

"A plaintiff's status as an employee may entitle him to a greater degree of protection from insult and outrage by a supervisor with authority over him than if he were a stranger." *Id.* at 1210. However, [Louisiana's] jurisprudence has limited the cause of action" in the workplace setting "to cases which involve a pattern of deliberate, repeated harassment over a period of time." *Nicholas v. Allstate Ins. Co.*, 99-2522, p. 11–12 (La. 8/31/00); 765 So. 2d 1017, 1025. "Conduct which is merely tortuous or illegal does not rise to the level of being extreme and outrageous." *Id.* at 1026. "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." *White*, 585 So. 2d at 1205.

---

[12] Based on a reading of the notice of removal, the motion to remand, and the defendants' response, there was confusion among the Court and the parties as to which causes of action Branden asserts against Patterson and Flores. In an April 17, 2019 phone call with Court personnel, Branden's counsel clarified that the only claims he is asserting against Patterson and Flores are claims for intentional infliction of emotional distress.

5

Accepting the allegations in the petition as true, the relevant facts are as follows: While working as an F.H. Paschen or a FHP employee, Branden observed "illegal practices" involving his employer, Patterson, and certain subcontractors.[13] Patterson, who works for the City of New Orleans (the "City"), would instruct F.H. Paschen to hire certain subcontractors at a particular price.[14] Certain City employees, presumably Patterson among them, would then receive unlawful kickbacks as a result of hiring the specified subcontractors and inflating their invoices.[15] On an unspecified date, Branden explained that he knew of other subcontractors which would perform better work for cheaper, but Patterson told him not to question the status quo.[16] Branden would also attempt to enforce certain rules and regulations with respect to the work being performed by the selected subcontractors, only to be told by Patterson and Flores, Branden's supervisor, not to talk to the subcontractors or make certain statements to them.[17]

In "mid to late 2015 or early 2016," Branden raised his concerns with Flores.[18] At a meeting in either November or December of 2017, Branden reiterated his contention about the availability of better quality subcontractors.[19] In response, Patterson threatened Branden by telling him that he could make people "disappear,"

---

[13] R. Doc. No. 1-2, at 2.
[14] *Id.*
[15] *Id.*
[16] *See id.*
[17] *Id.* at 2–3.
[18] *Id.* at 3.
[19] *Id.*

6

that he had "done it before."[20] Shortly thereafter, on an unspecified date, Flores began threatening Branden's job and life.[21] For example, he told Branden, "Other things can happen than you just losing your job. Remember Herb, Mike, and Larry."[22] Herb was a former subcontractor who had been shot in the head. Mike and Larry were former FHP employees, and Mike had suffered adverse consequences after complaining about a favored subcontractor.[23]

Patterson and Flores's threats both included references to the complaints Branden had been raising.[24] They would ask him who else he had spoken to about his concerns and then accuse him of cooperating with investigations into Patterson's conduct.[25] When Branden denied cooperating, he was called a liar and "threatened with physical harm and adverse employment action."[26] As a result of his supposed cooperation, he was also "given conflicting information on what his duties should entail, and then reprimanded no matter what course of action he took."[27]

Patterson was fired by the City in June 2018.[28] In a June 25, 2018 meeting with Flores, Branden addressed the threats made against him and asked to speak to corporate counsel about how he should respond to inquiries about Patterson's

---

[20] R. Doc. No. 1-2, at 3.
[21] *Id.*
[22] *Id.*
[23] R. Doc. No. 1-2, at 3 & n.1. Specifically, Branden alleges that Mike "was removed from the JOC program," but the petition does not explain what the JOC program is.
[24] *Id.* at 3.
[25] *Id.*
[26] *Id.* at 7.
[27] *Id.*
[28] *Id.* at 3.

7

termination.²⁹ Flores denied his request and ignored a follow-up e-mail Branden sent weeks later, on July 11, 2018.³⁰ Fifteen days later, Branden was terminated.³¹

In his complaint, Branden describes the foregoing events as a "campaign of deliberate and repeated harassment . . . over the course of several months."³² As a result, he alleges that he had to take leave from work for several days due to his stress and anxiety.³³ Additionally, he alleges that, "[d]espite the addition of a home security system, and changes to his house that would make home invasion more difficult, [he] continues to suffer extreme fear and anxiety."³⁴

Accepting the facts in Branden's petition as true, the Court cannot conclude that Branden has no reasonable possibility of recovery, at least against Flores, for intentional infliction of emotional distress. The defendants argue that Flores's purported conduct does not rise to the level of extreme and outrageous behavior.³⁵ But Flores repeatedly harassed, intimidated, and threatened Branden from a position of power over the course of several months. He went so far as to threaten Branden with the fate suffered by a man who was shot in the head, making the threat significantly more credible than a death threat would be otherwise. Although liability for intentional infliction of emotional distress "does not extend to *mere . . . threats*,"

---

²⁹ *Id.* at 4.
³⁰ R. Doc. No. 1-2, at 4.
³¹ *Id.*
³² *Id.* at 7.
³³ *Id.*
³⁴ *Id.*
³⁵ *Id.* at 10.

8

*White*, 585 So. 2d at 1209 (emphasis added), the repeated threats described in Branden's petition are sufficient to pass muster under Rule 12(b)(6).

"Moreover, when viewed in context, the threats, even if made on just one occasion, can be seen as part of 'a pattern of deliberate, repeated harassment over a period of time.'" *Rhyce v. Martin*, 173 F. Supp. 2d 521, 535 (E.D. La. 2001) (Clement, J.) (quoting *Nicholas*, 765 So. 2d at 1026). Flores's interactions with Branden cannot be fairly characterized as a routine workplace dispute. *See Griffith v. Louisiana*, 808 F. Supp. 2d 926, 935 (E.D. La. 2011) (Berrigan, J.); *see also Singleton v. St. Charles Parish*, 02-590 (La. App. 5 Cir. 11/26/02); 833 So. 2d 486, 494 (explaining that "disciplinary action and conflict in a pressure-packed workplace environment . . . is not ordinarily actionable"). In addition to unfairly reprimanding Branden, refusing to allow him to express his concerns, and threatening to fire him, Flores insinuated that he would *kill* Branden if he cooperated with the investigation of a government employee's illegal activities. Branden's resulting emotional distress was certainly "more than a reasonable employee might be expected to endure in the workplace." *Nicholas*, 765 So. 2d at 1030.

The Court, therefore, also rejects the defendants' argument that the petition does not sufficiently allege that Flores desired to inflict severe emotional distress or knew that such distress would result from his conduct.[36] Accepting Branden's allegations as true, Flores's threats were intended to inflict severe emotional distress—for the purpose of ensuring that Branden would not interfere with the

---

[36] R. Doc. No. 14, at 8.

9

defendants' alleged scheme or cooperate with investigators.[37] Furthermore, "courts [ ] have found that because of the fact-driven subjective inquiry into the states of mind of the actors required to satisfy prong[ ] . . . three of the *White* test, [it is] often not amenable to resolution on a motion to dismiss." *Ruffin v. Prof'l Serv. Indus.*, No. 00-3518, 2001 WL 128313, at *3 (E.D. La. Feb. 14, 2001) (Barbier, J.) (citing *Henson v. Bassett Furniture Indus., Inc.*, No. 99-3462, 2007 WL 1477496, at *5 (E.D. La. Oct. 4, 2000) (Schwartz, J.)).[38]

---

[37] *See* R. Doc. No. 1-2, at 7–8.

[38] The defendants argue that any intentional infliction of emotional distress claim against Patterson has prescribed. R. Doc. No. 14, at 4. However, because the Court concludes that Branden has sufficiently pled a claim for intentional infliction of emotional distress against Flores, thereby destroying diversity among the parties, it need not consider the defendants' prescription argument as to Patterson.

The parties also dispute the significance of Branden's conspiracy allegations. According to Branden, Patterson, Flores, Wright, F.H. Paschen, and FHP all conspired to carry out an illicit "kickback scheme." R. Doc. No. 8-1, at 5. He further alleges that, over a significant period of time, they threatened and harassed Branden to prevent him from effectively revealing or foiling their illegal activities or cooperating with related investigations. *Id.*

Louisiana law does not recognize an independent cause of action for civil conspiracy; however, article 2324 of the Louisiana Civil Code provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." "[T]he actionable element in a claim under [article 2324] is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part." *Currier v. Entergy Servs., Inc.*, No. 11-2208, 2014 WL 4450360, at *2 (E.D. La. Sept. 10, 2014) (Feldman, J.) (quoting *Ross v. Conoco, Inc.*, 02-299 (La. 10/15/02); 828 So. 2d 546, 552).

As a predicate to imposing liability for civil conspiracy, a plaintiff must first establish the substantive offense underlying the alleged conspiracy. *See Aranyosi v. Delchamps, Inc.*, 98-1325 (La. App. 1 Cir. 6/25/99); 739 So. 2d 911, 917 (holding that, because the plaintiffs failed to establish a defamation claim, they also failed to demonstrate that the defendants were involved in a conspiracy to defame); *see also*

The allegations in Branden's petition are sufficient to support an intentional infliction of emotional distress claim against Flores at the Rule 12(b)(6) stage. Because the defendants have not demonstrated that there is no possibility of recovery against Flores, who is a non-diverse defendant, the Court finds that he has not been improperly joined. Consequently, the citizenship of the parties is not diverse, and the Court lacks subject matter jurisdiction over this action.[39]

### IV.

Accordingly,

**IT IS ORDERED** that Branden's motion to remand is **GRANTED** and that the above-captioned matter is **REMANDED** to the Civil District Court for the Parish of Orleans, State of Louisiana for lack of subject matter jurisdiction.

---

*Jefferson v. Lead Indus. Ass'n, Inc.*, 930 F. Supp. 241, 248 (E.D. La. 1996) (Vance, J.) ("[P]laintiff's conspiracy to commit fraudulent misrepresentation claim is defective because the underlying fraudulent misrepresentation claim is defective."). As stated herein, the Court finds that Branden has alleged facts in his petition sufficient to state a claim for intentional infliction of emotional distress against Flores under Rule 12(b)(6). As a result, the Court need not determine whether Flores conspired with any of the other defendants to commit the tort and, therefore, subject the other defendants to solidary liability.

Finally, in a one-sentence request, Branden asks the Court to grant him attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c). R. Doc. No. 8-1, at 9. However, because the issue has not been properly briefed, the Court declines to consider whether attorneys' fees and costs are warranted.

[39] "In a case with multiple . . . defendants, the presence in the action of a [ ] plaintiff from the same State as a single defendant deprives the court of original diversity jurisdiction *over the entire action*." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) (emphasis added).

**IT IS FURTHER ORDERED** that Branden's request for attorneys' fees and costs is **DENIED.**

New Orleans, Louisiana, April 22, 2019.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**